UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**RICK AGEN,**

    **Plaintiff,**

    v.                                                                     Case No. 21-CV-01063-SCD

**KILOLO KIJAKAZI,**
  *Acting Commissioner of Social Security,*

    **Defendant.**

---

### DECISION AND ORDER

---

Rick Agen applied for social security disability benefits based on several physical and mental health issues. His claim was denied, and the denial was affirmed by an administrative law judge (ALJ) employed by the Social Security Administration (SSA). The Appeals Council affirmed.

Agen now seeks judicial review of the ALJ's decision because he believes that the ALJ erred in finding his depression and anxiety non-severe and by not incorporating any mental restrictions into his residual functional capacity (RFC). Further, he argues that he is entitled to a new hearing because the structure for removing the Commissioner of the SSA violates the United States Constitution.[1] Kilolo Kijakazi, the Acting Commissioner of the SSA,

---

[1] Nearly every court hearing this argument has rejected it. I have rejected the same argument at least six times in the last six months. *See Robinson v. Kijakazi*, No. 21-CV-238-SCD, 2022 WL 443923, 2022 U.S. Dist. LEXIS 25681 (E.D. Wis. Feb. 14, 2022); *Timm v. Kijakazi*, No. 21-CV-131-SCD, 2022 WL 843920, 2022 U.S. Dist. LEXIS 50594 (E.D. Wis. Mar. 21, 2022); *Swiecichowski v. Kijakazi*, No. 21-CV-249-SCD, 2022 WL 2069251, 2022 U.S. Dist. LEXIS 104593 (E.D. Wis. May 27, 2022); Decision & Order, *Metoxen v. Kijakazi*, No. 21-CV-341-SCD (E.D. Wis. June 21, 2022); *Everson v. Kijakazi*, No. 21-CV-716-SCD, 2022 WL 3656462, U.S. Dist. LEXIS

maintains that the ALJ did not commit reversible error in denying Agen's claim, substantial evidence supported the ALJ's decision, and Agen is not entitled to relief on his constitutional claim. I agree with Kijakazi on each point; thus, I will affirm the denial of disability benefits.

## BACKGROUND[2]

### I. Personal and Work History

Rick Agen was fifty-four years old at the time the ALJ released his decision. R. 79.[3] At the time of the hearing, he lived with his wife and thirty-year-old son in a single-family home in Wisconsin. R. 44. Agen completed high school and some college and has an FAA license that certifies him to perform mechanical work on airplanes. R. 41. Agen alleged disability since October 15, 2019, due to osteoarthritis, major depressive disorder, tinnitus, and hypertension. R. 231.

Agen has a considerable work history with the U.S. Navy Reserves and with an aerospace company. Agen was honorably discharged in 2016 from the U.S. Navy Reserves after twice failing to deploy due to conflicts with his supervisors. R. 318-319. Agen also worked at Gulfstream Aerospace (Gulfstream) for twenty-nine years. During his time as a supervisor with Gulfstream, Agen's coworkers and supervisors "expressed concerns regarding his irritability," and he was twice written up for saying "inappropriate things." *See* R. 318, 387. On one of these occasions, Agen was investigated for making his staff feel intimidated and uncomfortable. R. 318. After this investigation, Agen was placed on a performance

---

152810 (E.D. Wis. Aug. 25, 2022); *Tallar v. Kijakazi*; 21-cv-611-SCD (E.D. Wis. Aug. 30, 2022). Agen's argument fails for the same reasons the argument failed in those cases—namely, that there is no causal connection between her adverse decision and the SSA's unconstitutional structure. *See, e.g.*, *Robinson*, 2022 U.S. Dist. LEXIS 25681, at *12–19. Accordingly, he is not entitled to relief on his constitutional claim.

[2] Agen only disputes the ALJ's findings related to his mental limitations, so I will focus my summary on those findings.

[3] The transcript and record are filed on the docket at ECF No. 11 to ECF No. 11-9.

improvement plan. *Id*. Agen reported to his healthcare provider that "he experience[d] difficulties facing people who may have contributed to his write-up." *Id*. Following a corporate restructuring, Agen's position was eliminated. R. 51. He was one of several employees that were let go, and he received severance payments. *Id*. Agen believes his contentious relationship with his supervisors and coworkers contributed to the company's decision to eliminate his position. *Id*.

From 2018 through 2020, Agen sought mental health treatment from the VA. His providers noted that he suffered from anxiety and depression, as well as suicidal ideation that he did not take steps towards fulfilling. *See, e.g.,* R. 389, 383. Several treatment notes from his providers suggest that his condition steadily improved with medication and psychotherapy. R. 386, 383-384, 372, 370. 495-496, 497, 485. His provider also noted that the loss of his job worsened Agen's depression but alleviated some of his anxiety. R. 383-384, 377-378, 495-496. The record also appears to reflect that the COVID-19 pandemic and its aftereffects stymied his progress and continued to prevent him from getting a new job. *See* R. 368-369, (Agen's doctor noted on March 30, 2020, that Agen "reported that he has been having a rough time. He is being turned down and has not heard from multiple jobs, likely due to the coronavirus situation."); R. 367 (Agen's doctor noted on May 14, 2020, that Agen reported that he was "[n]ot great but hanging in there," that "the medication is keeping him 'level,'" and that "he is hopeful that restrictions will lift soon and things will improve.").

## II. The Claim Review Process

On June 22, 2020, Agen filed a claim for disability insurance benefits. R. 13. As part of the claim review process, two state psychological consultants reviewed Agen's health records. Dr. Kocina conducted the initial review and found that Agen's depression imposed

mild limitations on his ability to understand, remember, and apply information, and his ability to concentrate, persist or maintain pace. R. 82-83. Dr. Kocina also found that Agen's depression imposed moderate limitations on his ability to interact with others and adapt and manage himself. *Id*. Dr. Kocina noted that a provider of Agen's observed only "mild transient [depression] symptoms which decrease work efficiency only during periods of significant stress with subclinical symptomology at baseline." *Id*. On reconsideration, Dr. Barthell adopted Dr. Kocina's findings and further noted that Agen's most recent therapy notes indicated that Agen's condition did not significantly deteriorate since the initial examination and that Agen, "still has good/bad days but his financial stress has lifted." R. 93-94.

Agen's claim was denied initially and on reconsideration. *Id*. Agen then filed for a hearing before an ALJ. *Id*. During the hearing, Agen had the opportunity to testify about the mental and physical symptoms he had experienced during his period of disability. *See* R. 60-63. Agen also testified about his daily activities and his interpersonal interactions with family members and others in the community. *See* R. 54-57.

The ALJ also heard testimony from a Vocational Expert (VE). The VE classified Agen's previous work as a "procurement manager." R. 67. The VE testified that a person of Agen's age, education, and experience that had a residual functional capacity (RFC) similar to the one ultimately assigned to Agen would be able to perform his past work as a procurement manager. R. 67-68. The VE also testified that the same hypothetical individual, if also limited to a low stress job—defined as a job requiring only occasional decision-making, having only occasional changes in the work setting, with no production rate or pace work, and no hourly production quotas—would not be able to work as a procurement manager, but

would be able to work in a number of other jobs available in significant numbers in the national economy. R. 68-69.

### III. The ALJ's Opinion

In applying the five-step disability evaluation framework,[4] the ALJ found at step one that Agen had not engaged in substantial gainful activity since the alleged onset date. R. 15. At step two, he found that Agen had the following severe impairments: degenerative joint disease of the bilateral shoulders and bilateral knees, obesity, and degenerative disc disease. R. 16. He found that Agen's depressive disorder was non-severe as it did not cause more than a minimal limitation in his ability to perform basic mental work activities. R. 17.

In finding Agen's depression non-severe, the ALJ considered Agen's limitations in the four broad areas of mental functioning (also known as "paragraph B" criteria). *Id*. He found that the claimant had no limitation in his ability to understand, remember, and apply information, and no limitation in his ability to concentrate, persist, and maintain pace. R. 17-18. The ALJ found that Agen had mild limitations in his abilities to interact with others and adapt and manage himself. *Id*.

In support of finding only a mild limitation in interacting with others, the ALJ explained that even though Agen had testified that he was irritable at work, he also reported that he "got along with authority figures 'ok,'" and his healthcare providers observed him to be cooperative and less anxious with continued treatment. *Id*. Further, the ALJ noted that during this same time that Agen was allegedly incapable of interacting in a work setting, he was able to go on vacation with friends (R. 56-57), traveled out of state for his son's white-

---

[4] 20 C.F.R. § 404.1520(a)(4) outlines the process for evaluating a disability claim.

coat ceremony (R. 57), was a volunteer coach for a school football team (R. 54-56), and volunteered on the school board for at least part of 2019 (R. 56). R. 18.

In support of finding only a mild limitation in adapting and managing oneself, the ALJ recognized that Agen reported not handling stress or changes in routine well and that he had also suffered from suicidal ideations. *Id*. The ALJ weighed this against other evidence in the record. He noted that Agen's testimony and treatment history showed that he was largely self-sufficient, and had no difficulty managing his hygiene, finances, and chores. *Id*. The ALJ also noted that a significant portion of Agen's difficulties in this functional area were situational, and once Agen left his job with Gulfstream, his mental health improved. *Id*. Most importantly, the ALJ focused on the drastic improvement in Agen's condition with "conservative and effective" treatment—talk therapy and antidepressant medication—which appeared to reduce his anxiety attacks and help him keep "somewhat of a level head." R. 19.

The ALJ explained that he found the opinions of state psychologists Drs. Kocina and Barthell unpersuasive largely because the doctors "did not have the benefit of reviewing the updated therapy notes, the opinion of the claimant's therapist . . . nor the evidence from the claimant's testimony regarding his engagement in online trading on a daily basis." *Id*. The ALJ found that Agen's documented improvement with therapy as well as his "normal speech, good insight and judgment and good hygiene and grooming," did not support the state psychologists' finding of moderate limitations in his ability to interact with others and his ability to adapt and manage himself. R. 20.

The ALJ also found unpersuasive the evidence provided by the VA because it did not present a complete picture. *Id*. The ALJ explained that the disability assessment from the VA described Agen's mental symptoms as "mild or transient" symptoms which "decreased his

work efficiency and ability to perform occupational tasks only during periods of significant stress." *Id*. The ALJ stated that this assessment was not fully persuasive as it applied different criteria than the social security disability assessment and gave only "vague generalizations of areas of potential limitations." *Id*. The ALJ was similarly unpersuaded by the treating source statement from Dr. Katie Thomas, Agen's therapist from the VA; he found her statements "limited in that they do not express the degree/frequency of the claimant's experience of these symptoms nor does she address how well his treatment has abated his symptoms." *Id.*

Moving on to step three, the ALJ found that Agen's impairments did not singly or in combination meet or medically equal the severity of a Listing impairment. R. 21. The ALJ then found that Agen had the RFC to perform work with several physical restrictions and with no mental restrictions. *Id*. In determining that no mental restrictions were necessary, the ALJ found that while Agen's medically determinable impairments could reasonably be expected to cause the alleged symptoms, Agen's statements regarding the intensity, persistence and limiting effects of the symptoms were not entirely consistent with the evidence. *Id*. At step four, the ALJ found that Agen could work in his previous job as a procurement manager. As such, the ALJ determined that Agen was not disabled.

The Appeals Council denied Agen's request for review on July 15, 2021, *see* R. 1-6, making the ALJ's decision a final decision of the Commissioner. *See Loveless v. Colvin*, 810 F.3d 502, 506 (7th Cir. 2016).

On September 13, 2021, Agen filed this action seeking judicial review of the decision denying his claim for disability benefits under 42 U.S.C. § 405(g). *See* ECF No. 1. His case was assigned to Judge Stadtmueller, who reassigned it to me after all parties consented to magistrate-judge jurisdiction under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b). *See* ECF No.

3, 4, 5. Agen filed a brief in support of his disability claim, ECF No. 12; Kijakazi filed a brief in support of the ALJ's decision, ECF No. 15; and Agen filed a reply brief, ECF No. 16.[5]

## APPLICABLE LEGAL STANDARDS

Under 42 U.S.C. § 405(g), a claimant may seek judicial review of a final administrative decision of the Social Security Commissioner. In such a case, a judge has the power to affirm, reverse, or modify the Commissioner's final decision. *Melkonyan v. Sullivan*, 501 U.S. 89, 99–100 (1991). The court can remand a matter to the Commissioner in two ways: it may remand "in conjunction with a judgment affirming, modifying, or reversing the [Commissioner's] decision," or it "may remand in light of additional evidence without making any substantive ruling as to the correctness of the [Commissioner's] decision." *Id.* Here, Agen seeks remand in conjunction with a decision reversing the Commissioner's decision.

The court will reverse the Commissioner's final decision only if the denial of disability benefits is "based on incorrect legal standards or less than substantial evidence." *Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020) (citing *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)). Substantial evidence simply means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Martin*, 950 F.3d at 373 (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)). The court "may not re-weigh the evidence or substitute its own judgment for that of the ALJ." *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004) (citing *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). It is limited to evaluating whether the ALJ has built an "accurate and logical bridge between the evidence and the result." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (citing *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003); *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001)).

---

[5] Agen devotes his entire reply brief to his constitutional claim, which I have rejected. *See supra* n. 1.

# DISCUSSION

Agen only challenges the ALJ's findings with respect to his mental health. He asserts that the ALJ erred by finding his depression non-severe at step two and by not including any mental limitations in his RFC.

## I. Substantial Evidence Supported the ALJ's Findings that Agen's Depression was Non-Severe.

At step two of the disability evaluation, the ALJ must determine whether a claimant has a medically determinable impairment that both lasts or can be expected to last for a continuous period of at least twelve months *and* that significantly limits the claimant's ability to do work activities. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1509; 404.1520(c). Generally, if an ALJ rates a claimant's paragraph B limitations as "none" or "mild" the condition is not considered severe. 20 C.F.R. § 404.1520a(d)(1). Agen only contests the findings of mild limitations in his ability to interact with others and his ability to adapt and maintain himself.[6] Accordingly, the foundational question here is whether the ALJ had substantial evidence to support his findings that Agen was only mildly limited in his abilities to interact with others and adapt and maintain himself.

Agen argues that his "well-documented, years-long history of conflict with family, co-workers, and superiors[] demonstrate[es] more than a 'minimal' impact in his ability to interact with others." ECF No. 12 at 11. Agen then lists symptoms that he claims the ALJ ignored: irritability in his family relationships; his self-reported low mood; difficulty keeping his temper; his history of suicidal ideation; his discharge from the military based on

---

[6] Agen does not individually address the adapting and managing oneself functional area. He uses the same evidence to support his arguments that both findings of mild limitations were erroneous.

interpersonal conflict; his write-ups at work for inappropriate behavior; and the state psychologists' opinions that Agen was only capable of superficial interactions and that he "would be best suited to jobs not requiring frequent changes." ECF No. 12 at 5-10.

Contrary to Agen's assertions, the ALJ *did* consider this evidence, as each piece of evidence listed was specifically mentioned in the opinion. *See* R. 17 ("[Agen] stated that he had problems getting along with family, friends, neighbors, and others."), R. 18 ("[Agen] did not handle stress or changes in routine well."); R. 17 ("[Agen] reported that he became angry more easily."); R. 18 ("[Agen] did present with some depressive symptoms and report suicidal ideations near the time of the alleged onset date."), ("[Agen] reported conflict with his superiors in the military that led to his retirement in 2016."); R. 24 ("[Agen] had experienced some interpersonal trouble with coworkers."); R. 19 ("[The ALJ] finds unpersuasive the opinions of the state agency DDS experts" because "they were not able to review the entirety of the developed record, they did not treat the claimant and their opinions are not consistent with the record."). As such, Agen's allegations that the ALJ did not consider the evidence is actually an argument that the ALJ did not give *enough* consideration to the evidence that Agen believes to be most supportive of his case. I cannot reweigh the evidence to determine whether the ALJ undervalued or overvalued certain pieces of evidence; I am limited to determining whether the ALJ had substantial evidence to adequately support his conclusion.

### A. The ALJ's consideration of non-medical evidence

The majority of the evidence Agen provides in support of his case is anecdotal evidence, *e.g.*, a physical fight with a family member, a short temper, his discharge from the military due to interpersonal conflict, and his write-ups at work for interpersonal conflict. These incidents do not unequivocally *demand* a finding that Agen's depression significantly

limited his ability to interact with others; the fact that a person did not keep his temper on several occasions does not mean he *could not* keep his temper. The ALJ compared these incidents with other social interactions noted in the record, including vacations with friends, trips with family, and volunteering with children,[7] and concluded that Agen's limitations in interacting with others were, overall, mild.

  B.    The ALJ's consideration of medical evidence

  The ALJ found that Agen's apparent improvement with therapy and medication indicated that his depression would not significantly interfere with his ability to work. Agen attempts to dispute that he experienced such improvement by saying that he experienced suicidal ideation "as late as August 2020," and that in February 2021, Dr. Thomas reported "'recurrent suicidal ideations & anxiety/panic attacks around people, depressed mood, and negative cognitions about self.'" ECF No. 12 at 14 (quoting R. 555). However, this information is taken out of context. For one, Dr. Thomas's report in February 2021 was a treating source statement in which she recounts all of Agen's symptoms and history over the course of her treatment of him, not his symptoms at a particular time. Further, the quoted portion of the record mentions nothing of suicidal ideations in August of 2020; this information appears to instead be pulled from Dr. Thomas's notes from a teletherapy session on August 19, 2020. R. 484-485. These notes do mention an instance of suicidal ideation, but in the larger context of the appointment, the ALJ could reasonably find this to be an isolated incident in Agen's recovery. During this session, Dr. Thomas noted that Agen had a few

---

[7] Agen protests that these are "activities which have little bearing on whether Mr. Agen interacts appropriately with others in the context of a work setting." ECF No. 12 at 14. However, SSA guidelines explain that because a person "use[s] the same four areas of mental functioning in daily activities at home and in the community that [the person] uses at work," an ALJ may use evidence of a person's daily activities to rate that person's mental functioning. 20 C.F.R., Pt. 404, Subpt. P, App. 1 § 12.00(F)(3)(b).

"down days" but had many good things going on in his life, including a job interview, a fun trip with friends, and trying to "stay busy." *Id.* Agen reported to Dr. Thomas that "there was one instance in which he experienced [suicidal ideation], but he immediately told himself that he did not want to go down that path . . . [Agen] indicated that the skills he learned in therapy . . . were helpful for his period of low mood." R. 485. Dr. Thomas characterized this as a "moment of fleeting SI without intent, which has since improved." *Id.*

The mostly optimistic tone in this session's notes is consistent with Dr. Thomas's notes from other appointments in 2020 that largely show improvement in Agen's depression. *See* R. 487 (Agen reported to Dr. Thomas on July 22, 2020 that he is "trying to stay busy and not fall into negative thought patterns," that he was applying to more jobs, and that he was considering going back to school); R. 495 (Agen reported to Dr. Thomas on June 18, 2020 that "he is still pursuing employment" and was in the running for four second-round interviews, that he experienced some "depressive symptoms around being unemployed and feeling like his wife is the breadwinner," and that "he is coping by staying busy and using self talk as needed."); R. 496-497 (Agen reported to Dr. Thomas on May 14, 2020 that he is feeling "not great, but hanging in there," that his medication keeps him "level," and that he is "hopeful that restrictions will lift soon and things will improve."); R. 500 (Agen reported to Dr. Thomas on March 9, 2020 that "he has been doing well . . . due to the combination of his medication regimen and what he has learned in therapy, including 'self-talk' and breathing."). Dr. Thomas noted in each of these reports that Agen had not expressed any suicidal ideation. *Id.* This longitudinal medical record constitutes substantial evidence, and I cannot find error in the ALJ's interpretation of it.

The ALJ had substantial evidence on which to base his finding that Agen's depression only mildly limited Agen's abilities to interact with others and to adapt and manage himself. The ALJ laid out the evidence from Agen's own testimony, from Agen's activities, and from his doctors, and explained why he did or did not find certain evidence persuasive. The ALJ built a logical bridge from Agen's demonstrated ability to interact with others and the improvement in his symptoms to the conclusion that Agen's depression would not significantly interfere with Agen's ability to work for a period of twelve months or longer.

## II. The ALJ Did Not Err by Not Including Mental Restrictions in the RFC.

When an ALJ finds a claimant not disabled at step three of the five-step process, the ALJ must determine that claimant's RFC, or the most the claimant can do despite the claimant's physical and mental limitations. 20. C.F.R. § 404.1545(a)(1). In determining a claimant's RFC, the ALJ must "consider the limitations imposed by all impairments, severe and non-severe." *Ray v. Berryhill*, 915 F.3d 486, 492 (7th Cir. 2019). However, that does not mean that the ALJ *must* include an accommodation for any mild limitations found. *See e.g.*, *Depies v. Saul*, No. 18-C-1794, 2019 WL 13155076, at *17 (E.D. Wis. Oct. 3, 2019) ("[S]ome mild mental limitations *may* require accommodation, but they do not inevitably do so.") (emphasis in original).

Agen argues that even if his mental impairments were not severe, it was legal error for the ALJ to fail to account for even mild mental limitations in the RFC. According to Agen, this error prejudiced his claim because the ALJ found that Agen could still work in his old role as a procurement manager, a supervisory position, when Agen believes that his limitations in interacting with others would bar him from such roles. Agen has neither

demonstrated why his mild limitations required a restriction in the RFC nor identified restrictions that he believes would be sufficient.

As detailed in the previous section, the ALJ had substantial evidence to support his finding that Agen's depression was non-severe; that same substantial evidence supports his determination that Agen did not need work restrictions to accommodate his non-severe depression. Because the ALJ reasonably found that Agen's depression only mildly limited his ability to work, the ALJ did not need to carve out highly exacting restrictions in the RFC for these mild limitations.

Agen's argument that he was unable to work in a supervisory role is similarly unconvincing. The ALJ supported his finding that Agen's depression did not bar him from supervisory positions with evidence of Agen's long work history (twenty-nine years working for the same company) and the fact that Agen continued to apply and interview for supervisory positions. R. 24-25. Agen apparently did not believe himself incapable of working in a supervisory role as his depression symptoms improved, so the ALJ reasonably believed Agen capable of such work. The ALJ had substantial evidence that Agen could work in a supervisory role.

Finally, even if Agen would benefit from certain restrictions in his RFC, any hypothetical error in excluding them is harmless. An error is harmless if the court is convinced that the ALJ would reach the same result on remand. *Lambert v. Berryhill*, 896 F.3d 768, 776 (7th Cir. 2018). Excluding mental limitations was harmless because the ALJ would still find Agen not disabled on remand because he could work in other jobs. Agen proposes one mental restriction that he believes should have been included in his RFC: a "low-stress job." ECF No. 12 at 17. The VE testified that a hypothetical person with Agen's RFC plus the additional

restriction of a low-stress job would not be able to perform Agen's previous job. R. 68. Agen cites this as support for his contention that the ALJ's exclusion of mental restrictions from the RFC was not harmless error. However, even assuming for the sake of argument that Agen's depression *required* that restriction, thereby making its exclusion an error, that error would *still* be harmless. True, the VE did testify that the hypothetical person would not be able to work as a procurement manager, but he also testified that the same person could work in a number of other jobs available in significant numbers in the national economy. R. 68-69. As such, even if the ALJ adopted the hypothetical restriction, he would almost certainly find that Agen could perform *some* work, even if it was not the same work he had done previously. Whether he did so at step four or step five, the ALJ would still have found Agen not disabled, making any error harmless.

## CONCLUSION

For all of the reasons explained above, I find that (1) Agen has not demonstrated that the ALJ committed reversible error in finding his depression non-severe and excluding mental limitations from the RFC; (2) substantial evidence supported the ALJ's decision; and (3) Agen is not entitled to relief on his constitutional claim. Thus, I **AFFIRM** the Commissioner's decision. The clerk of court shall enter judgment accordingly.

**SO ORDERED** this 28th day of November, 2022.

_____
STEPHEN C. DRIES
United States Magistrate Judge